UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ANTHONY TUCKER, | |
| Plaintiff, | Case No. 3:16-cv-00485 |
| v. | Magistrate Judge Newbern |
| JOHN RUDD, et al., | |
| Defendants. | |

## MEMORANDUM AND ORDER

Upon the consent of the parties, this case has been transferred to the Magistrate Judge to conduct all proceedings and enter final judgment in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 184.) Pending before the Court are the motion for summary judgment of Defendants John Rudd, Rudd Medical Management Services, and Kenneth Tucker (the Medical Defendants) (Doc. No. 81); the motion for judgment on the pleadings, or, in the alternative, for summary judgment, of Defendants Robert Arnold, Derrell Cagle, and Chris Deal (the Jail Defendants) (Doc. No. 123). For the reasons provided below, the Defendants' motions for summary judgment are GRANTED. This case will be DISMISSED and all other pending motions are FOUND MOOT.

# I.     Background

## A.     Factual History[1]

Tucker is an inmate at the Rutherford County Adult Detention Center (RCADC) in Murfreesboro, Tennessee. (Doc. No. 1, PageID# 2.) During the time of the events described in Tucker's complaint, Defendant John Rudd was the owner and Medical Director of Defendant Rudd Medical Management Services, PLC (RMMS), a private company that contracts with the Rutherford County Sheriff's Office to provide healthcare services to inmates. (Doc. No. 61-1, PageID# 313, 315.) Defendant Kenneth Tucker (K. Tucker) was a registered nurse and RMMS's Director of Health Services. (*Id.* at PageID# 313.) Defendant Robert Arnold was the Sheriff of Rutherford County (Doc. No. 125-1, PageID# 923, ¶ 1), Defendant Chris Deal was the Jail Administrator of RCADC (Doc. No. 127-1, PageID# 934, ¶ 1), and Defendant Derrell Cagle was the Captain of Detention at RCADC (Doc. No. 126-1, PageID# 928, ¶ 1).

Tucker alleges that he has not received proper medical care for his injured back while incarcerated at RCADC. (Doc. No. 1, PageID# 5–6.) Tucker's back problems stem from a lifting injury he suffered at some point prior to his arrival at RCADC on February 13, 2015. (Doc. No. 1-1, PageID# 17; Doc. No. 136, PageID# 1091.) To treat that injury, Doctor Michael Moran, Tucker's surgeon, operated on Tucker's back, performing a lumbar laminectomy on November 19, 2013. (Doc. No. 1-1, PageID# 11.) Tucker's pain recurred after the operation. On June 6, 2014, Moran examined Tucker and concluded that Tucker should "continue with non-surgical management" despite Tucker's interest in additional surgery. (Doc. No. 95, PageID# 598.) In

---

[1]     These facts come primarily from the Jail Defendants' statement of undisputed material facts and related documents (Doc. Nos. 125-1, 126-1, 127-1, 128, 136) and Tucker's complaint and pending motions to amend it (Doc. Nos. 1, 83, 95). The Court construes all facts in the light most favorable to Tucker.

another post-operation appointment on January 2, 2015, Tucker was "very adamant" about additional surgery even though Moran "stressed [that surgery] is not the most favorable way to deal with" Tucker's pain. (Doc. No. 1-1, PageID# 11.) Tucker emerged from that appointment convinced that Moran had prescribed him another surgery. (Doc. No. 83, PageID# 473; Doc. No. 140-2, PageID# 1240.)

Tucker arrived at RCADC on February 13, 2015 (Doc. No. 136, PageID# 1091), and informed medical staff that he had recently undergone back surgery and that his "nerve block [was] about to w[ear] off." (Doc. No. 95-1, PageID# 603) Tucker also claims that he immediately requested another back surgery. (*Id.*) Tucker alleges that, despite having notified the Medical Defendants of his back problems, he received no medical attention until March 18, 2015, when he saw Nurse Wisdom. (Doc. No. 83, PageID# 473.) That allegation is inconsistent with medical records submitted by the Jail Defendants indicating that Tucker was seen for intakes on the day of his arrival and on February 20, 2015, although the notes associated with those entries do not mention Tucker's back. (Doc. No. 124-2, PageID# 856.) On March 23, 2015, Tucker was put on "medical observation status." (Doc. No. 136, PageID# 1092, ¶ 6.)

Tucker alleges that, throughout his time at RCADC, he was "being see[n], not treated."(Doc. No. 95-1, PageID# 604.) Tucker believed "proper treatment" required an additional surgery on his back, consistent with what Tucker understood to have been Moran's recommendation. (Doc. No. 83, PageID# 473; Doc. No. 136, PageID# 1092, ¶ 10.) Tucker claims that the Medical Defendants denied him such surgery so that Rudd could save money. (Doc. No. 83, PageID# 472–73.) Even if proper treatment did not require surgery, Tucker argues that he should have been sent to see a specialist who could prescribe "medication used to treat serious back pain[.]" (Doc. No. 136, PageID# 1092, ¶ 9.) Tucker received pain medication throughout his

time at RCADC, but contends that the medication was ineffective. (*Id.*; Doc. No. 206, PageID# 1748.) Tucker concedes that, between March 27, 2015, and June 6, 2017, he had a total of 111 encounters with medical personnel, yet he states that such interactions did not amount to "treatment." (Doc. No. 136, PageID# 1092, ¶ 8.) Tucker also concedes that he received a spinal x-ray and an intrathecal injection at the office of Cedar Grove Medical Associates on May 4, 2015, and an MRI of his spine at the Imaging System of Murfreesboro on March 17, 2016. (*Id.* at PageID# 1093, ¶ 12.) Tucker claims that the Jail Defendants knew of the deficiencies in the treatment he was receiving, yet "d[id] nothing[.]" (Doc. No. 83, PageID# 474.)

### B. Procedural History

On March 3, 2016, Tucker filed this 42 U.S.C. § 1983 action against the Medical and Jail Defendants asserting that they were deliberately indifferent to his back problems in violation of the Eighth Amendment. (Doc. No. 1, PageID# 1, 5.) On June 20, 2016, the Court granted Tucker's motion to amend his complaint to "include claims related to his neck." (Doc. No. 78, PageID# 453–54.) Tucker has filed two additional motions to amend his complaint, both of which are currently pending before the Court.[2] (Doc. Nos. 83, 95.)

The Medical Defendants filed their motion for summary judgment on June 21, 2016. (Doc. No. 81.) Tucker has responded in opposition multiple times. (Doc. Nos. 94, 97, 112, 121, 140, 147, 154.) The Jail Defendants have also responded (Doc. No. 103). In support of that motion, the Medical Defendants filed a memorandum of law (Doc. No. 84), a statement of undisputed material facts (Doc. No. 85), and Rudd's affidavit (Doc. No. 86). The Jail Defendants filed their motion for

---

[2]     The Court has considered the substance of these motions in ruling on the motions for summary judgment and finds that the amendments they propose do not materially affect their resolution.

judgment on the pleadings, or, in the alternative, for summary judgment on July 26, 2016 (Doc. No. 123), to which Tucker responded several times (Doc. Nos. 136, 137, 154). In support of their motion, the Jail Defendants submitted a memorandum of law (Doc. No. 124), the affidavits of Arnold, Cagle, and Deal (Doc. Nos. 125, 126, 127), and a statement of undisputed facts (Doc. No. 128). On September 14, 2016, Tucker filed a document entitled "motion for summary judgment" in which he argues that there are material facts in dispute meriting a trial (Doc. No. 154, PageID# 1325, 1343–44), and which, as both the Medical and Jail Defendants point out (Doc. No. 155, PageID# 1501; Doc. No. 156, PageID# 1509 n.1), is therefore better labeled a response to their motions for summary judgment. Accordingly, the Court construes Tucker's "motion for summary judgment" as another response in opposition to the Defendants' dispositive motions.

## II.    Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when its proof would establish or refute an essential element of the cause of action. *Golevski v. Home Depot U.S.A., Inc.*, 143 F. App'x 638, 642 (6th Cir. 2005) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). To demonstrate the absence of a material factual dispute, the movant must cite to "particular parts of materials in the record" (including depositions, affidavits or declarations, and other materials), Fed. R. Civ. P. 56(c)(1)(A), or show— "that is, point[] out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also* Fed. R. Civ. P. 56(c)(1)(B)(stating that a movant may demonstrate the absence of a material factual dispute by "showing that the materials cited" do not establish such a dispute). Thus when the non-moving party has the burden to establish an essential element of the cause of action, but fails to do so, and

the movant points that out, the movant is entitled to summary judgment as a matter of law. *Williams v. Ford Motor Co.*, 187 F.3d 533, 537 (6th Cir. 1999) (citing *Celotex*, 477 U.S. at 322–23). In ruling on a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). However, the non-moving party, in responding to a motion for summary judgment, "cannot rest solely on the allegations" contained in the pleadings. *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009) (quoting *Skousen v. Brighton High Sch.*, 305 F.3d 520, 527 (6th Cir. 2002)).

This Court's Local Rule 56.01 governs motions for summary judgment. Regarding responses to statements of material facts, Local Rule 56.01(c) provides that, "[a]ny party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record." M.D. Tenn. R. 56.01(c) (motions for summary judgment). Rule 56.01(g) states that "[f]ailure to respond to a moving party's statement of material facts . . . shall indicate that the asserted facts are not disputed for the purposes of summary judgment." *Id.* § 56.01(g).

Under 42 U.S.C. § 1983, an individual has "a cause of action against any person who, under color of state law, [has deprived the individual] of any right, privilege, or immunity secured by the Constitution and federal law." *McKnight v. Rees*, 88 F.3d 417, 419 (6th Cir. 1996) (citing 42 U.S.C. § 1983). A private company contracting with the state to provide medical services to prison inmates may be sued under § 1983 as an entity acting "under color of state law." *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (citing *West v. Atkins*, 487 U.S. 42, 54 (1988)). Private physicians

serving inmate populations are subject to suit under § 1983 as well. *Carl v. Muskegon County*, 763 F.3d 592, 596 (6th Cir. 2014).[3] A county official sued in her official capacity is also subject to suit under § 1983, although such a suit is treated as one against the county. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

In the analysis that follows, the Court assumes that Tucker has not sued any defendant in his individual capacity and that Tucker seeks only injunctive relief in this action. In Tucker's complaint, he states that he is suing Rudd, Arnold, and Cagle in their official capacities only, but does not mention K. Tucker or Deal. (Doc. No. 1, PageID# 4.) However, Tucker does not demand monetary relief in his complaint or in any subsequent pleadings.[4] A defendant should be "properly named and clearly notified" before being held liable for the payment of damages individually, *Wells v. Brown*, 891 F.2d 591, 593 (6th Cir. 1989). The Defendants have not been properly named or notified so as to support individual capacity damages claims in this action.

---

[3] The Medical Defendants argue that *Minneci v. Pollard*, 565 U.S. 118 (2012), stands for the proposition that "an inmate does not have a right of action against an employee of a private contractor under the U.S. Constitution." (Doc. No. 84, PageID# 478.) But *Minneci* involved a *Bivens* action against employees of a federal prison, unlike the instant § 1983 lawsuit, in which Tucker alleges that the Medical Defendants, who contract with the county to provide medical care to inmates, violated his constitutional rights under color of state law. *See Minneci*, 565 U.S. at 120; *Alajemba v. Rutherford Cty. Adult Detention Ctr.*, No. 3:11-0472, 2012 WL 1514878, at *4 (M.D. Tenn. May 1, 2012) (distinguishing *Minneci* from a similar case involving an Eighth Amendment claim against RCADC); (Doc. No. 94, PageID# 576). The Court addresses this issue in more depth below.

[4] In response to an interrogatory asking Tucker to describe all damages suffered "including the monetary value of each type of damages," Tucker wrote "pain [and] suffering for 19 months" but declined to assign a monetary value. (Doc. No. 97-1, PageID# 641, ¶ 9.) In response to a subsequent interrogatory asking whether Tucker was seeking punitive damages, Tucker wrote "leave it up to Judge." (*Id.* at PageID# 642, ¶ 18.)

### III. Analysis

The Court makes its analysis into two parts, according to the legal standard that is relevant to the alleged Eighth Amendment violation: (a) the standard governing Tucker's claim for injunctive relief against the individual Defendants sued in their official capacities and (b) the standard governing Tucker's claim against RMMS.[5]

#### A. Claims Against the Jail Defendants In Their Official Capacities

Because Tucker has sued Jail Defendants in their official capacities only, his suit is treated as one against Rutherford County. *See Kentucky*, 473 U.S. at 166. When a § 1983 claim is brought against a municipality, the Court must determine: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the [county] is responsible for that violation. *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). A county will only be found liable if the plaintiff can show "that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

As the Jail Defendants argue, Tucker simply has not identified any policy or custom implemented by Rutherford County that is the cause of the harm he alleges. Tucker makes extensive allegations about individual actors and the treatment he received, which are discussed in detail below. But that is not enough to hold these defendants liable in their official capacities. Rutherford County is not liable for the acts of its employees under a *respondeat superior* theory. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Nor can it be held liable for an implicit or

---

[5] Although the Medical Defendants read Tucker's complaint as potentially raising a health care liability claim under Tennessee law (Doc. No. 84, PageID# 485), Tucker makes clear in a response to the Medical Defendants' motion for summary judgment that he intended only to raise a deliberate indifference claim under § 1983: "I don['] t think Tenn. Code Ann. § 29-26-101 et seq. [applies] to this case[.] RMMS, Doctor Rudd[,] and Ken Tucker are liable under 42 U.S.C. § 1983[.]" (Doc. No. 147, PageID# 1281.)

unwritten policy or practice unless that practice is identified. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). Again, Tucker does not point to any such policy as the cause of his harms alleged here.

For that reason alone, judgment in favor of these defendants would be appropriate on Tucker's official capacity claims. However, to the extent Tucker intended to bring claims against these defendants in their individual capacities, his claims could not proceed past summary judgment. As the Court sets out below, Tucker has not provided evidence sufficient to create a genuine issue of material fact that any defendant has violated his Eighth Amendment protections.

### B. Tucker's Eighth Amendment Claims

Tucker invokes § 1983 to allege violations of his Eighth Amendment right to be free from cruel and unusual punishment, which has been held to prohibit deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). To succeed on a "deliberate indifference" claim, Tucker must establish that his medical need was objectively sufficiently serious. *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). A sufficiently serious medical need is one that has been "diagnosed by a physician as mandating treatment" or one that is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mattox v. Edelman*, 851 F.3d 583, 598 (6th Cir. 2017) (quoting *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897, 899–900 (6th Cir. 2004)). Tucker must then demonstrate that each defendant was subjectively aware of a substantial risk of harm to Tucker that they chose to disregard. *Gunther v. Castineta*, 561 F. App'x 497, 500 (6th Cir. 2014).

### 1. Sufficiently Serious Medical Need

Only the Jail Defendants contend that Tucker's back condition is not sufficiently serious.[6] (Doc. No. 124, PageID# 806.) Their argument relies on *Smith v. Jones*, in which the court held that the presence of a serious medical condition alone is insufficient to establish the objective component of a deliberate indifference claim; instead, "[t]he plaintiff must make an objective showing that the deprivation was sufficiently serious or that the result of the defendant's denial was sufficiently serious." No. 1:08-CV-661, 2009 WL 6632300, at *5 (W.D. Mich. 2009) (internal quotation omitted) (citing *Smith v. Carpenter*, 316 F.3d 178, 186 (2nd Cir. 2003)); (Doc. No. 124, PageID# 806). The Jail Defendants argue that Tucker has made no such showing. (Doc. No. 124, PageID# 806–07.)

The record contains sufficient evidence from which a reasonable jury could conclude that Tucker's medical condition is sufficiently serious. Tucker underwent back surgery in November 2013 and had two follow-up appointments due to recurring pain prior to his arrival at RCADC. (Doc. No. 1-1, PageID# 11; Doc. No. 95, PageID# 598.) A medical record from Tucker's January 2, 2015 follow-up appointment indicates that Moran was amenable to the prospect of operating on Tucker's back again (even if he did not view that as the best course of treatment) and shows that, at the time, Tucker was taking two different pain medications (Metformin and Norco). (Doc. No. 1-1, PageID# 11.)

Rudd's affidavit indicates that treatment of Tucker's back condition continued under his watch at RCADC. Rudd states that, on April 28, 2015, in response to Tucker's complaint of chronic back pain, Rudd "added an extra mattress for comfort, increased Mr. Tucker's medication, and

---

[6]     The Medical Defendants do not address the objective component of Tucker's deliberate indifference claim. (Doc. No. 84, PageID# 484–85.)

scheduled a spinal facet steroid injection for May 4, 2015." (Doc. No. 86-1, PageID# 501, ¶ 6.)
Tucker's medical records and Rudd's affidavit support the conclusion that Tucker's back problem
was "diagnosed by a physician as mandating treatment" and is therefore sufficiently serious to
satisfy the objective component of a deliberate indifference claim. *Mattox*, 851 F.3d at 598.

### 2. Disregarded Risk of Substantial Harm: K. Tucker and Rudd

Tucker proposes three theories of deliberate indifference with respect to K. Tucker and
Rudd.[7] First, K. Tucker and Rudd prevented him from getting the surgery that he had been
prescribed, thereby denying him "proper treatment." (Doc. No. 83, PageID# 473.) Second, the
medical care K. Tucker and Rudd provided was so ineffective that it did not even amount to
treatment. (*Id.*) And third, K. Tucker and Rudd failed to provide Tucker with any medical care for
an unacceptably long stretch of time. (*Id.*)

The first element of Tucker's deliberate indifference claim requires a showing that K.
Tucker and Rudd were aware of a substantial risk of harm to Tucker. *Gunther*, 561 F. App'x at
500. Neither K. Tucker nor Rudd dispute that they were aware that Tucker was in pain and that he
insisted that he needed surgery. In his affidavit, Rudd states that Tucker was "seen by a nurse on
March 18, 2015 and April 11, 2015 due to his complaint of back pain and his request for surgery."
(Doc. No. 86-1, PageID# 500, ¶ 5.) An included medical record shows that K. Tucker was present
at an April 28, 2015 examination of Tucker in which Tucker complained that he was "hurt[ing] all

---

[7]     The Medical Defendants read Tucker's "motion for summary judgment" as raising, for the
first time, a theory of deliberate indifference based on failure to train. (Doc. No. 154, PageID#
1330; Doc. No. 155, PageID# 1502, 1504–05.) To the extent that Tucker has raised such a theory
in his "motion" (which is in fact a response to Defendants' dispositive motions), the theory is not
properly before the Court. "[A] plaintiff may not expand his claims to assert new theories for the
first time in response to a summary judgment motion." *Desparois v. Perrysburg Exempted Vill.
Sch. Dist.*, 455 F. App'x 659, 666 (6th Cir. 2012) (citing *Bridgeport Music, Inc. v. WM Music
Corp.*, 508 F.3d 394, 400 (6th Cir. 2007)).

the time" and insisted on "elective surgery." (Doc. No. 1-1, PageID# 19.) A reasonable jury could therefore conclude that K. Tucker and Rudd were aware that Tucker's back problem presented him with a substantial risk of harm. The question then becomes whether K. Tucker and Rudd's refusal to arrange for the surgery (Tucker's first theory of deliberate indifference), the medical care they provided Tucker (Tucker's second theory), or the timing of that care (Tucker's third theory) were enough to constitute a disregard for that risk of harm amounting to deliberate indifference.

### a. Denial of Surgery

In *Estelle*, the Supreme Court held that, when a claim of deliberate indifference can be reduced to a disagreement between patient and doctor regarding what constitutes proper diagnosis and treatment, the plaintiff has failed to state a deliberate indifference claim. *Estelle*, 429 U.S. at 107 (finding that patient who claimed more should have been done to diagnose and treat his back had failed to state a claim where doctors had diagnosed the injury as a lower back strain and treated it with "bed rest, muscle relaxants and pain relievers"). The Sixth Circuit has instructed that, in cases in which the complaint alleges inadequate medical care rather than a complete denial thereof, courts are "generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

Applying those rules here, it appears at first glance that Tucker has failed to raise a genuine issue of material fact in asserting that he was wrongfully denied back surgery. Tucker does not claim that he was denied all medical care—in fact, he concedes that he received a spinal x-ray and an intrathecal injection on May 4, 2015, an MRI of his spine on March 17, 2016, and that he had 111 total encounters with medical personnel at RCADC between March 27, 2015 and June 6, 2017. (Doc. No. 136, PageID# 1092–93). Courts have found that a patient's preference for back surgery over the prescribed course of treatment is not enough alone to make out a claim for deliberate

indifference. *See Shofner v. Comacho*, No. 99-6717, 2000 WL 1359633, at *2 (6th Cir. Sept. 14, 2000) (finding that to be the case even where patient's preference was supported by a recommendation from an outside doctor); *Trofatter v. Caruso*, No. 1:08-CV-1018, 2010 WL 1032675, at *9–10 (W.D. Mich. Jan. 19, 2010).

However, Tucker's claim is not just that he should have received the surgery he was prescribed, it is that Rudd denied him surgery in order to save money: "Mr. Rudd didn't want to pay for this treatment, because, if he keeps cost[s] down he will split what's left Ex ZG, page 9 of the bid agreement (X)[.]" (Doc. No. 83, PageID# 472.) From Tucker's perspective, the spinal facet steroid injection that he received instead of surgery was "the cheap way out." (*Id.* at PageID# 473.) The Sixth Circuit has held that "a decision to provide an 'easier and less efficacious treatment' may suffice to establish deliberate indifference." *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017) (quoting *Warren v. Prison Health Servs., Inc.*, 576 F. App'x 545, 552 (6th Cir. 2014)). That holding is an exception to the general rule that disagreements about what constitutes proper treatment are not actionable. *Id.* In *Darrah*, the prisoner-patient argued that he had been prescribed Methotrexate instead of Soriatane to treat his psoriasis only because Methotrexate was the cheaper drug. *Id.* The court held that, because the prescribing doctor knew that only Soriatane had successfully treated Darrah's psoriasis, a reasonable jury could conclude that the doctor was deliberately indifferent to Darrah's medical needs by prescribing the cheaper Methotrexate. *Id.* at 373.

Here, however, surgery for Tucker is not indisputably the only efficacious treatment option. Although Moran ultimately seemed amenable to the idea of proceeding with surgery, he did stress to Tucker that surgery was "not the most favorable way to deal with" the return of Tucker's pain. (Doc. No. 1-1, PageID# 11.) Therefore, even if it is true, as Tucker alleges, that K. Tucker and

Rudd saved money by denying Tucker surgery (an allegation to which K. Tucker and Rudd have not responded), their choice to do so cannot be construed as deliberate indifference given that the surgeon who ostensibly prescribed surgery for Tucker found that surgery was the "less efficacious" treatment for Tucker's back pain. *Darrah*, 865 F.3d at 372; (Doc. No. 1-1, PageID# 11). Tucker's first theory of deliberate indifference therefore lacks sufficient support to survive summary judgment.

### b. Quality of Medical Care

Tucker's second theory of deliberate difference appears to be that the care he did receive was so inadequate that it could not fairly be labeled treatment: "it's like having no treatment at all[.]" (Doc. No. 154, PageID# 1327.) Tucker states that he was not treated "from 2/12/15 to May 2015, from May 2015 to present." (Doc. No. 83, PageID# 473.) Yet, elsewhere, Tucker mentions seeing a nurse on March 18, 2015, being visited by K. Tucker and Rudd on April 28, 2015, and getting an MRI on June 6, 2016. (*Id.* at PageID# 471–73.) Tucker also concedes that, between March 27, 2015 and June 6, 2017, he had 111 total encounters with medical personnel, although he denies that such encounters amounted to "treatment." (Doc. No. 136, PageID# 1092, ¶ 8; Doc. No. 154, PageID# 1342.) Tucker claims that he "repeat[ed]ly asked for help" (Doc. No. 83, PageID# 473) and exhibits he has filed bear that out: Tucker complained that the pain medication he was receiving was ineffective and requested different medication or a referral to a specialist on May 7, 2015, May 29, 2015, June 6, 2015, and September 5, 2015. (Doc. No. 1-1, PageID# 10, 20, 21; Doc. No. 140-2, PageID# 1250.) Tucker's admitted interactions with medical personnel are consistent with his claim that throughout his time at RCADC, he was being "see[n,] not treated." (Doc. No. 95-1, PageID# 604.)

The Sixth Circuit has held that, "[w]hen the need for medical treatment is obvious, medical care which is so cursory as to amount to no treatment at all" may constitute deliberate indifference. *Darrah*, 865 F.3d at 370 (alteration in original) (quoting *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002)). In *Darrah*, the court held that it was for the jury to resolve whether a doctor who treated Darrah manifested deliberate indifference by continuing to administer the drug despite the lack of any "noticeable improvement." *Id.* at 369–70. Darrah complained for months that the drug was not alleviating his pain, yet the doctor's only "affirmative action" was to "increase the dosage" of the drug and "advise Darrah to continue taking [it]." *Id.* at 369.

Although Tucker appears to have complained multiple times over the course of several months that the pain medication he was receiving was not working, medication was not the extent of the medical care provided. Tucker concedes that he received a cane on March 23, 2015, a spinal x-ray and steroidal injection on May 4, 2015, and later, an MRI. (Doc. 136, PageID# 1093, ¶ 12; Doc. No. 137, PageID# 1102). Further, although Rudd did not refer Tucker to Moran, as K. Tucker and Rudd contend (Doc. 131, PageID# 1045), Rudd did consult with Moran regarding Tucker's back injury. (Doc. No. 86-1, PageID# 502, 504.) Moran concluded that Tucker's most recent MRI showed "no clear cut indications for any immediate need for surgical intervention." (*Id.* at PageID# 504; Doc. No. 131, PageID# 1045.) Tucker responds that Moran's "sham" conclusion was the result of Rudd's "tampering" (Doc. No. 112, PageID# 730; Doc. No. 154, PageID# 1333), but Moran had stressed to Tucker that surgery was "not the most favorable way to deal with" Tucker's back pain before Tucker had arrived at RCADC. (Doc. No. 1-1, PageID# 11.) This distinguishes Tucker's claims from those made in *Darrah*. *See Darrah*, 865 F.3d at 369–70. Looking at the

record as a whole, a reasonable jury could not conclude that the medical care Tucker received was so cursory and inadequate as to amount to no treatment at all.

### c. Timing of Medical Care

Tucker's final theory of deliberate indifference is that too much time passed before he began to receive *any* medical care from Medical Defendants. The Sixth Circuit has "long held that prison officials who have been alerted to a prisoner's serious medical needs are under an obligation to offer medical care to such a prisoner." *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Even "relatively short periods of delay or neglect" of treatment have been found to constitute deliberate indifference. *Darrah*, 865 F.3d at 368. Tucker states that he was booked into the Detention Center on February 11, 2015, but that he did not see Nurse Wisdom about his back until March 18, 2015. (Doc. No. 83, PageID# 473.) Tucker further alleges that he was not treated by Rudd until May 15, 2015, about three months after his arrival, when he received the steroidal injection. (*Id*.) That was so despite having requested surgery upon arrival at RCADC and having notified "medical staff" that his "nerve block" was wearing off. (*Id.*) In his affidavit, Rudd states that he saw Tucker on April 28, 2015, to "discuss a plan of care for his chronic back pain" which ended up including "an extra mattress for comfort," an increase in Tucker's medication, and the scheduling of a steroidal injection for May 4, 2015. (Doc. No. 86-1, PageID# 501, ¶ 6.) Rudd also asserts that, "[u]pon incarceration, on or about February 13, 2015, Anthony Tucker was examined and given ibuprofen due to his complaint of back pain." (*Id.* at PageID# 500, ¶ 4.) Medication records submitted by the Jail Defendants show that Tucker did not start receiving ibuprofen until February 21, 2015, and that Tucker did not receive stronger medication until March 30, 2015. (Doc. No. 124-3, PageID# 902–05.)

The Court need not determine whether the pace of K. Tucker and Rudd's response to Tucker's medical needs was constitutionally sufficient because the injunctive relief Tucker seeks would not remedy this alleged Eighth Amendment violation. In *Rhinehart v. Scutt*, the Sixth Circuit held that plaintiff's claim that he was "denied care for two weeks after his transfer to Cotton Correctional Facility" was "irrelevant to his immediate need for medical care, and at most, would be a claim for damages." 509 F. App'x 510, 514 (6th Cir. 2013). Similarly, Tucker's allegation that he was denied care during his initial months at RCADC is irrelevant to his current need for medical care, and therefore "do[es] not warrant an injunction." *Id.* Because the injunctive relief Tucker seeks could not remedy the relevant harm, this claim must also fail.

### 3. Disregarded Risk of Substantial Harm: Jail Defendants

Tucker advances two theories of deliberate indifference with respect to the Jail Defendants: first, that the Jail Defendants knew that Tucker had been prescribed surgery but did not intervene on his behalf to demand that surgery (Doc. No. 83, PageID# 473); and second, that the Jail Defendants knew more generally that Tucker was receiving inadequate care, yet did nothing about it. (*Id.* at PageID# 474.) The Jail Defendants argue that they were not aware that Tucker faced a serious risk of harm due to his medical condition (Doc. No. 124, PageID# 807) and bolster that position in their statement of undisputed facts and supporting affidavits. Arnold denies knowing, prior to this lawsuit, of Tucker's medical condition at all. (Doc. No. 125-1, PageID# 923, ¶ 3; Doc. No. 128, PageID# 940, ¶ 17.) Cagle, as Captain of Detention, was briefed through "emails, reports, and shift supervisors" regarding the serious medical conditions of inmates and was therefore aware of Tucker's condition. (Doc. No. 126-1, PageID# 928, ¶ 2; Doc. No. 128, PageID# 942, ¶ 25.) However, Cagle asserts that he was satisfied that Tucker's health was not in jeopardy after consulting with K. Tucker, who assured Cagle that Tucker was receiving "extensive medical

treatment." (Doc. No. 126-1, PageID# 928, ¶ 3; Doc. No. 128, PageID# 943, ¶ 30.) Deal states that he helped Tucker get a cane soon after Tucker arrived at RCADC, but that otherwise, he had no interactions with Tucker concerning his medical condition. (Doc. No. 127-1, PageID# 934, ¶ 2; Doc. No. 128, PageID# 941, ¶ 20.)

To survive summary judgment, Tucker must point to evidence beyond the pleadings that establishes a material factual dispute on the question of the Jail Defendants' knowledge. Tucker fails to do so in his response to the Jail Defendants' statement of undisputed facts. Tucker's response also does not comply with this Court's Local Rule 56.01(c), which states that "[e]ach disputed fact must be supported by specific citation to the record." M.D. Tenn. Rule 56.01(c). None of Tucker's responses to the Jail Defendants' assertions that they were unaware Tucker faced a serious risk of harm provides any such citations. (Doc. No. 136, PageID# 1094–98.) Instead, Tucker's responses amount to conclusory assertions. Tucker states that "Mr. Arnold should have known [Tucker faced a serious risk of harm]" and that "Mr. Deal should have [known] that something should be recommended." (Doc. No. 136, PageID# 1094–95.) These are not sufficient responses with sufficient support in the record to establish a material factual dispute.

Even if Tucker had responded more fully, the record as a whole does not present a triable issue on the question of whether the Jail Defendants were aware of a serious risk of harm to Tucker. Tucker's allegations against the Jail Defendants are sparse. After alleging that he had been prescribed surgery, Tucker claims, "Mr. Cagle[] stated [] that I need[ed] to wait [to have surgery]" and "Deal[] was administration[] and allowed this to go on." (Doc. No. 83, PageID# 473.) Later, Tucker states that "the def[]en[dants] all knew of my condition and d[id] nothing." (*Id.* at PageID# 474.) Exhibits in the record contain some additional detail. A record of the "Inmate Grievance System" shows that Cagle responded to a grievance Tucker submitted in which Tucker complained

of his pain and requested to see his surgeon by writing, "[y]ou are being seen by medical staff and Dr. Rudd." (Doc. No. 1-1, PageID# 21.) Two different "Inmate Information Request Slips" show what appear to be appeals from grievance denials. The first is labeled "Captain Cagle, Appeal #6603" and contains Tucker's allegation that he was not being treated properly and needed an MRI. (*Id.* at PageID# 23.). The second is labeled "Sheriff Robert F. Arnold, Appeal #6603" and contains Tucker's description of the pain he was experiencing at the time and a request for an MRI and "maybe surgery." (*Id.* at PageID# 24.)

Nothing in the record supports the conclusion that the Jail Defendants, even if they were aware of Tucker's back problems (Doc. No. 154, PageID# 1338), were not entitled to defer to the medical judgment of the medical staff. Lay officials, at least in some circumstances, are entitled to rely on the medical assessments of their more knowledgeable colleagues. *See Spears v. Ruth*, 589 F.3d 249, 255 (6th Cir. 2009). In *Spears*, the court held that a police officer was not aware of a substantial risk of harm to a detainee, even though the detainee had admitted to smoking crack, because the officer reasonably relied on the EMT and jail nurse's opinion that the detainee did not need to go to the hospital. *Id.* In *Mitchell v. Hininger*, the Sixth Circuit applied *Spears* in the context of a correctional facility, finding that, as a matter of law, an assistant warden of that facility was not aware of a substantial risk of harm to Mitchell (the prisoner) despite having received complaints about delays in treatment; the warden was at most "aware that Mitchell wanted more treatment than the medical staff was providing." 553 F. App'x 602, 607–08 (6th Cir. 2014). The court concluded that the warden was entitled to rely on medical staff's medical judgments. *Id.* at 607. Tucker's responses to the Jail Defendants' undisputed statement of facts are unsupported assertions that those defendants knew (or should have known) that he was not being treated properly. (Doc. No. 136, PageID# 1094–98.) Such responses fail to support the proposition that it

was unreasonable for the Jail Defendants to rely on the medical judgments of the medical staff. (Doc. No. 137, PageID# 1102–03.) At most, Tucker has shown that the Jail Defendants were aware that Tucker wanted more or different treatment than what he was receiving. *See Mitchell*, 553 F. App'x at 607–08. Tucker has not raised a triable issue of deliberate indifference with respect to the Jail Defendants.

Because the Court concludes that none of the individual defendants sued in their official capacities have violated Tucker's Eighth Amendment rights, the second part of the municipal liability inquiry—namely, whether the municipality is responsible for the violation—is unnecessary. *See Collins*, 503 U.S. at 120.

### B.     Claim Against RMMS

To the extent that Tucker seeks only injunctive relief against RMMS, he fails to raise a triable issue for the reasons given above in relation to the individual defendants. However, RMMS makes additional arguments concerning the propriety of the suits against it and, in particular, of any potential damages claim against it.

In its motion for summary judgment, RMMS argues that *Minneci v. Pollard* established that Tucker cannot assert a cause of action under § 1983 against RMMS, a private contractor, or any of its employees. (Doc. No. 84, PageID# 481–83.) In *Minneci*, the Supreme Court considered whether to "imply the existence of an Eighth Amendment-based damages action (a *Bivens* action) against employees of a privately operated federal prison." *Minneci*, 565 U.S. at 120. In refusing to do so, the Court focused on the existence of adequate alternative state tort law remedies, which amounts to "a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Id.* at 122–23, 129–30 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)). RMMS argues that Tennessee tort law provides Tucker with "adequate remedies"

against all the Medical Defendants and, therefore, that Tucker "cannot assert a cause of action under the Eighth Amendment and 42 U.S.C. § 1983." (Doc. No. 84, PageID# 482–83.) Yet because a § 1983 action is a statutory cause of action, concerns in the *Bivens* context about the potential overreach associated with a judge-generated "new kind of federal litigation" are irrelevant. *Wilkie* 551 U.S. at 550 (quoting *Bush v. Lucas*, 462 U.S. 367, 378 (1983)). The Court finds that *Minneci* does not apply here and that the existence of any state law remedies against the Medical Defendants in no way affects Tucker's ability to bring a lawsuit under § 1983. *See McGaw v. Sevier County*, No. 3:15-CV-12-PLR-HBG, 2015 WL 5687566, at *3 (E.D. Tenn. Sept. 25, 2015) (joining other courts that have "declined to extend the holding in *Minneci* to § 1983 cases brought by prisoners in state-run facilities) (collecting cases).

However, RMMS is still entitled to summary judgment if Tucker's proof fails to support an essential element of his claim against it. The Sixth Circuit has held that a government contractor, like RMMS, is subject to suit under § 1983 when it has a policy or custom that results in a constitutional violation. *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005). In order to raise a triable issue of deliberate indifference against RMMS, Tucker must identify a policy or custom, connect that policy or custom to RMMS, and show that deliberate indifference to his medical needs was the result of the execution of that policy or custom. *See Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993). Tucker's only references to RMMS concern a provision in its contract with Rutherford County stating that RMMS "shall make referral arrangements with specialists for the treatment of those inmates with health care problems, which may extend beyond the primary care services provided on-site." (Doc. No. 83, PageID# 472; Doc. No. 95-1, PageID# 605; Doc. No. 154, PageID# 1331.)

Even if those references were liberally construed to represent an assertion that RMMS has a policy or custom of shirking its duty to refer its patients to see specialists, Tucker would still have failed to raise a triable issue of deliberate indifference. That is because, as discussed above, Tucker has not shown that the treatment he received—even though it did not include the referral to a specialist that he wanted—constituted deliberate indifference to his medical needs. Therefore, Tucker has failed to raise a triable question of deliberate indifference with respect to RMMS.

## IV.    Conclusion

For the foregoing reasons, Defendants' motions for summary judgment (Doc. Nos. 81, 123) are GRANTED and Tucker's claims are DISMISSED with prejudice. All other pending motions (Doc. Nos. 82, 83, 95, 154, 195, 204, 210, 224, 229, 231, 233, 240) are FOUND MOOT.

This order shall serve as the final judgment in this action.

It is so ORDERED.


ALISTAIR E. NEWBERN
United States Magistrate Judge